UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:14-00100 |
| | ) | Judge Sharp |
| JOSE NAVARRETE BRAVO | ) | |
| WILLIAM DANIEL NAVARRETE | ) | |

## ORDER

In this criminal case alleging the knowing and unlawful transportation of aliens within the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (A)(v)(II), Defendant Jose Navarrete Bravo has filed a Motion to Dismiss Indictment (Docket No. 126), to which the Government has responded in opposition (Docket No. 129). Defendant's Motion will be denied based on the record as it presently exists.

Defendant asserts that "[t]he principal contested issues at this trial will be whether Mr. Navarrete Bravo knew that his passengers were in the United States illegally." (Docket No. 126 at 1). His motion for dismissal is "premised on the deportation of certain material witnesses whether voluntarily or at the behest of the government," and he claims that those witness are "key to his defense" because they "would testify that they had no conversation with the defendant concerning their status in the United States." (Id.).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor[.]" U.S. CONST. amend. VI. The seminal case addressing the confrontation clause in the context of a case where a witness has been deported is United States v. Valenzuela–Bernal, 458 U.S. 858 (1982). There, the Supreme Court observed that "the responsibility of the Executive Branch faithfully to execute the immigration

policy adopted by Congress justifies the prompt deportation of illegal-alien witnesses upon the Executive's good-faith determination that they possess no evidence favorable to the defendant in a criminal prosecution." Id. at 872. Thus, the mere deportation of an alien is not sufficient to show a violation of the right to compulsory process. Rather, to establish a constitutional violation where a witnesses has been deported, a defendant must show that his or her testimony would have been material and favorable. Id. at 867.

Based upon Valenzuela-Bernal, the Supreme Court's subsequent decision in Arizona v. Youngblood, 488 U.S. 51 (1988), and the application of those decisions by four Circuit Court of Appeals, the Sixth Circuit, in United States v. Damra, 621 F.3d 474, 489 (6th Cir. 2010), modified what had been its three-prong "test for violations of compulsory process in the context of deported witnesses" to a two-prong test. Under Damra, "in order to demonstrate that the government has violated his right of compulsory process, a defendant must first make an initial showing that the government has acted in bad faith, and, having made that showing, must then make some plausible showing that the testimony of the deported witness would have been both material and favorable to his defense." Id. at 489-90.

Defendant has not demonstrated that the Government has acted in bad faith. After the traffic stop which led to the arrest of Defendant and his son, the depositions of the passengers in the Chevrolet Trailblazer were taken.[1] Not only was Defendant provided the opportunity to attend the depositions,[2] the record reflect that his counsel (or another attorney from counsel's office) cross-examined each of the witnesses.

---

[1] A detailed recitation of the facts surrounding the traffic stop which led to Defendant's arrest can be found in United States v. Bravo, 2015 WL 1650287, at *1-3 (M.D. Tenn. April 14, 2015).

[2] Counsel waived Defendant's attendance at some of the depositions.

2

Moreover, the Government asserts, and Defendant does not dispute, that the only potential witness who was a passenger in the van and who was deported is Antonio Tadeo Sontiso. Further, two of the witnesses placed under the supervision of pre-trial services have absconded, and warrants have been issued for their arrest.

Clearly, the Government cannot be said to have engaged in bad faith with regard to the potential witnesses who have fled while on supervised release. As for Mr. Sontiso, the Court has read his deposition and, though hardly a matter of clarity, he seems to state that he did not provide any money to Defendant for the transportation, and Defendant (who was driving the Trailblazer) did not talk to the passengers. While these contentions lend support to Defendant's position, they may be cumulative of other witnesses' testimony. Additionally, the Government specifically indicated at the deposition that it did not intend to call Mr. Sontiso during its case-in-chief, and it appears that Defendant did not object. In fact, according to the Government, Defendant did not "seek retention of any witness pending trial." (Docket No. 129 at 5).

Under the two-prong test, it has been observed:

> Once the government is aware that an alien has potentially exculpatory evidence, it must treat that person as a material witness and give defense counsel the opportunity to interview him and make a reasoned determination whether to seek his retention pending trial. This means the witness may not be deported before defense counsel has been retained or appointed and has had a fair opportunity to interview him. If defense counsel advises the government that the witness may be useful to the defense, he may not be deported until defense counsel indicates he is no longer needed. If the government wants to deport the witness notwithstanding defense counsel's wishes, it must obtain permission from the district court on a showing of good cause, which defense counsel must have the opportunity to oppose; it must also afford defense counsel the opportunity to cross-examine the witness and preserve the testimony for trial.

United States v. Leal-Del Carmen, 697 F.3d 964, 970 (9th Cir. 2012). Here, not only was Defendant allowed to interview Mr. Sontiso, he cross-examined him and was afforded the opportunity to

request that he remain in the country pending trial.

Given the record as it presently exists, the Court finds that Defendant has not shown a compulsory process violation. This does not mean, however, that the depositions of the occupants in the Trailblazer will automatically be admissible in lieu of live testimony at trial. In fact, that issue is the subject of Defendant's Motion in Limine to Exclude Hearsay Evidence (Docket No. 120). That Motion and the other Motions in Limine (Docket Nos. 123, 124, and 125) will be considered at a pretrial conference which the Court schedules for Monday, June 15, 2015, at 9:30 a.m. For now, however, Defendant's Motion to Dismiss Indictment (Docket No. 126) is DENIED.

It is SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE